IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


MSCI 2007-IQ16 GRANVILLE RETAIL, LLC,

                Plaintiff,

  vs.                              Case No. 2:11-cv-487
                                     Magistrate Judge King

UHA CORPORATION, LLC, *et al.*,

                Defendants.


<u>OPINION AND ORDER</u>

This is a diversity action in which plaintiff MSCI 2007-IQ16 Granville Retail, LLC ("plaintiff" or "MSCI"), as assignee, seeks a money judgment, declaratory relief and foreclosure of mortgaged premises in Delaware, Fairfield and Franklin Counties, and associated leases and personal property, following the alleged default of defendant UHA Corporation, LLC ("UHA"), on a commercial loan. *First Amended Complaint*, ECF 29. UHA asserts counterclaims for an accounting and an accord and satisfaction. *Amended Answer of Defendant UHA Corporation, LLC to the Complaint,* ECF 36. With the consent of the parties pursuant to 28 U.S.C § 636(c), this matter is before the Court on the *Motion of Plaintiff MSCI 2007-IQ16 Granville Retail, LLC for Appointment of Receiver*, ECF 41 ("*Receivership Motion*"), and *Defendant UHA's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, or in the Alternative for Judgment on the Pleadings, or in the Alternative for Summary Judgment,*

ECF 51 ("*UHA's Motion*").

## I.    FACTUAL ALLEGATIONS AND RELEVANT PROCEDURAL BACKGROUND[1]

On June 6, 2011, Bank of America, National Association, as successor by merger to LaSalle Bank National Association ("LaSalle Bank"), as Trustee for the Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 filed this action.  *Complaint*, ECF 1.  On August 17, 2011, the Court administratively closed the case pending resolution of the bankruptcy proceedings of defendant UHA, *Order*, ECF 11, but reactivated the case on October 23, 2013.  *Order*, ECF 13.

Thereafter, MSCI filed a motion for an order designating it as the real party in interest and substituting it as plaintiff.  ECF 15 ("*Motion for Substitution*").  In support of that motion, MSCI attached copies of allonges purporting to reflect certain assignments and transfers.  *Exhibit 1*, attached to ECF 15.  On November 15, 2013, the Court, by agreed order, granted the *Motion for Substitution*:

The Court finds as follows:

1.    Plaintiff Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for the Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-JQ16 ("**BOA**"), held all of the loan documents that are the basis of this action herein (collectively the "**Loan Documents**").

2.    Pursuant to the Assignments and Allonges as more fully described in the Motion, BOA assigned its interest in the Loan Documents to Assignee #2 (as that term is defined in the Motion), which in turn has assigned them to MSCI.

---

[1] The statements contained in this section are set forth for purposes of resolving only *UHA's Motion* and the *Receivership Motion*.

3.   MSCI is the real party in interest with regard to the Loan Documents and is therefore entitled to prosecute this action as plaintiff.

Accordingly, the Court, being duly advised in the premises and for good cause shown, finds the Motion well taken and hereby grants the same.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED** that MSCI 2007-IQ16 Granville Retail, LLC shall be, and hereby is, substituted as Plaintiff for all purposes herein, and that the caption of this case shall henceforth be*, MSCI 2007-IQ16 Granville Retail, LLC, Plaintiff, v. UHA Corporation, LLC, Defendant.*

*Agreed Order Substituting MSCI 2007-IQ16 Granville Retail, LLC as Plaintiff Herein*, ECF 16, pp. 1-2 ("*Agreed Order*") (emphasis in original).

MSCI later filed the *First Amended Complaint*, ECF 29 ("*Amended Complaint*") alleging, *inter alia*, that it is "the assignee and the holder of the promissory note, mortgages, financing statements and assignments of leases and rents more fully described below, together with additional documents related to the loan transaction (hereinafter collectively referred to as "**Loan Documents**") that is the subject of this action." *Id*. at ¶ 1 (emphasis in original).  MSCI also alleged that National City Bank ("the Original Lender") extended a loan to UHA in the original principal amount of $9,600,000.00 pursuant to the terms and conditions of a certain promissory note dated August 14, 2007 ("the Note").  *Id*. at ¶ 8; *Exhibit A*, attached thereto.  According to MSCI,

9.   The Note was assigned and transferred as follows:

a.   By a First Allonge to Promissory Note from original Lender to LaSalle Bank National Association, as Trustee for the Holders of Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("**Assignee #1**") dated October 24, 2007;

3

     b.    By an Allonge from Bank of America, National Association, success by merger to Assignee #1[2] to U.S. Bank National Association, as Trustee, as Successor-In Interest to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee for the Holders of Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("**Assignee #2**"); and

     c.    By an Allonge from Assignee #2 to MSCI.

*Amended Complaint*, ¶ 9 (emphasis in original).

To secure obligations evidenced by the Note, UHA executed and delivered to the Original Lender three mortgages (collectively, "the Mortgages"), encumbering certain land and improvements located in Delaware, Fairfield and Franklin Counties (collectively, "the Real Estate"). *Id*. at ¶¶ 11-15. UHA also granted the holder of the Mortgages a security interest in any items as part of the Real Estate that may be subject to a security interest under the Uniform Commercial Code, including, but not limited to "all inventory, furniture, equipment and fixtures and other property of every kind and nature whatsoever located upon the Real Estate or the improvements thereon or appurtenant thereto or used in connection with the present or future operation of the Real Estate or the improvements thereon[.]" *Id*. at ¶ 17. In addition, UHA executed and delivered to the Original Lender certain assignments of leases and rents, assigning certain additional collateral in the Mortgages as security, including "leases,

---

[2] "References herein to Assignee #1 are to LaSalle Bank National Association, as Trustee with respect to assignments from Original Lender, and are to Bank of America, National Association, as Trustee, as successor by merger to LaSalle Bank National Association with respect to assignments to Assignee #2, because LaSalle Bank, National Association merged into Bank of America, National Association after the assignments from Original Lender, but before the assignments to Assignee #2." *Amended Complaint*, ¶ 9 n.1.

subleases, tenancies, subtenancies, licenses, contracts, contract rights and occupancy agreements affecting any portion of the mortgaged property, together with rents, revenues, payments, income, issues, profits deposits, accounts, cash, bankruptcy claims, lease guaranties, proceeds and other rights of UHA" (collectively, "the Assignments of Rents"). *Id*. at ¶ 26.

> According to MSCI, UHA
>
> defaulted on its obligations to Plaintiff under the Loan Documents by virtue of various acts and failures to act, including without limitation its failure to make payments when due of amounts payable of the Note, as a result of which Assignee #1 accelerated the maturity of the Note and instituted this foreclosure action.

*Id*. at ¶ 34.

In response to the *Amended Complaint*, UHA admitted, *inter alia*, the allegations in paragraphs 9 (regarding transfers and assignments) and 34 (regarding UHA's alleged default under the Loan Documents). *Amended Answer of Defendant UHA Corporation, LLC to the Complaint*, ECF 36, ¶ 1 ("*UHA's Amended Answer*"). UHA also raised two affirmative defenses. *Id*. at ¶¶ 5-6. First, UHA stated that "since the commencement of this action in June 6, 2011, substantial payments in the form of adequate protection payments were made to substitute plaintiff's predecessor in interest" and after the bankruptcy court dismissed UHA's bankruptcy filing, "additional, voluntary payments continued for more than an additional 12 months[.]" *Id*. at ¶ 5. UHA also asserted the defense of accord and satisfaction or settlement as a bar to plaintiff's claims for relief:

> As its Second Affirmative Defense Defendant states that during the period between May of 2012 and December 2012, Debtor and Plaintiff's predecessor in interest, negotiated

a resolution of the controversy between the parties in the
nature of a loan modification agreement.  At the request of
said predecessor, defendant consented and attempted to
arrange a "soft block" Controlled Account with Fifth Third
Bank, the designated financial institution of the lender.
Creation of such an account was a prerequisite to
completion of the agreed to loan modification documents.
Through no fault of Defendant, and after expenditure of
considerable time and effort, Fifth Third Bank suddenly and
without reasonable explanation refused to proceed further
with the Controlled Account agreement.  Thereafter
defendant was unable to obtain cooperation from the lender
or its servicer in completing the arrangements described
above.  The course of dealing described represents an
Accord and Satisfaction or Settlement barring relief to
Plaintiff in this case.

*Id.* at ¶ 6.

## II.  *UHA'S MOTION*

UHA urges the Court to dismiss the action because plaintiff is
not real party in interest.  *UHA's Motion*.  Plaintiff opposes *UHA's
Motion*.  ECF 60 ("*Plaintiff's Memo. in Opp.*").  No reply to *UHA's
Motion* has been filed.

### A.  **Applicable Standard**

UHA moves to dismiss this action pursuant to Rules 12(b)(6),
12(c) or 56 of the Federal Rules of Civil Procedure.  Because the
parties have had the opportunity to fully address the matters raised
in *UHA's Motion* and they rely on documents outside the pleadings, the
Court will construe *UHA's Motion* as a motion for summary judgment
under Rule 56.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule
12(b)(6) or 12(c), matters outside the pleadings are presented to and
not excluded by the court, the motion must be treated as one for
summary judgment under Rule 56."); *Jones v. City of Cincinnati*, 521
F.3d 555, 562 (6th Cir. 2008) ("On a motion to dismiss, a court may
accept 'matters outside the pleadings,' but in doing so it generally

6

must treat the motion 'as one for summary judgment under Rule 56.'")
(quoting Fed. R. Civ. P. 12(d)).

The standard for summary judgment is well established.  This
standard is found in Rule 56 of the Federal Rules of Civil Procedure,
which provides in pertinent part:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence
must be viewed in the light most favorable to the non-moving party.
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment
will not lie if the dispute about a material fact is genuine, "that
is, if the evidence is such that a reasonable jury could return a
verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).  However, summary judgment is appropriate if the
opposing party fails to make a showing sufficient to establish the
existence of an element essential to that party's case and on which
that party will bear the burden of proof at trial.  *Celotex Corp. v.
Catrett,* 477 U.S. 317, 322 (1986).  The mere existence of a scintilla
of evidence in support of the opposing party's position will be
insufficient; there must be evidence on which the jury could
reasonably find for the opposing party.  *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial
responsibility of informing the district court of the basis for its
motion, and identifying those portions of the record which demonstrate
the absence of a genuine issue of material fact.  *Catrett,* 477 U.S. at
323.  Once the moving party has met its initial burden, the burden

then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-moving party must support the assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F. Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id. See also* Fed. R. Civ. P. 56(c)(3).

**B.   Discussion**

UHA argues that plaintiff is not the real party in interest

entitled to prosecute this foreclosure action.  *UHA's Motion*, pp. 2-5. However, UHA, through counsel, has previously expressly agreed to the characterization of plaintiff as the "real party in interest." *Agreed Order*, ¶ 3.  *See Exhibits A* and *B*, attached to *Plaintiff's Memo. in Opp*.  Accordingly, the Court has already concluded, with the agreement of the parties, that MSCI is the real party in interest and a proper plaintiff in this foreclosure action.  As plaintiff points out, "[t]he law of the case doctrine generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings." *Bowles v. Russell*, 432 F.3d 668, 676-77 (6th Cir. 2005) (quoting *United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003) (internal quotation marks omitted).  UHA has not addressed this argument nor has it offered any persuasive reason why this Court should reconsider its earlier holding that MSCI is the real party in interest entitled to pursue foreclosure in this action. Accordingly, *UHA's Motion* is not well-taken.[3]

## III.  *RECEIVERSHIP MOTION*

Plaintiff asks the Court to appoint a receiver to oversee the operations of the following property located in Delaware, Fairfield and Franklin Counties:

(1)  A retail strip shopping center located at 4038 Morse Road, Columbus, Franklin County, Ohio commonly known as Diamond Plaza, and being UHA's fee interest in Parcel Numbers 010-213780;

(2)  A stand-alone retail facility located at 3755 W. Dublin-Granville Road, Dublin, Franklin County, Ohio, being Parcel No. 273-008358;

(3)  A stand-alone retail facility located at 1141 Polaris Parkway,

---

[3] Having so concluded, the Court need not, and does not, address the parties' remaining arguments relating to *UHA's Motion*.

Columbus, Delaware County, Ohio, being Parcel No. 31843301004003;

(4)   A retail strip shopping center located at 2312 Taylor Park Drive, Reynoldsburg, Fairfield County, Ohio, being Parcel No. 0447379120; and

(5)   UHA's interest in the associated Personal Property.

*Receivership Motion*, p. 3 (referring to this real and personal property, collectively, as "the Project").

Plaintiff explains that, as set forth above, it is the owner and holder of the Note, the Mortgages and Assignments of Rents.  *Id*. at 4 (citing *Affidavit* of Rachel Naylor, ¶ 3, attached thereto as Exhibit 2) ("*Naylor Affidavit*").[4]  Plaintiff holds a mortgage lien on or a security interest in the Project pursuant to the terms of the Mortgages.  *Id*. (citing the mortgage for the property located in Franklin County, attached to the *Naylor Affidavit*, as *Exhibit B*). According to plaintiff, UHA defaulted on the terms of the Loan Documents, causing plaintiff's predecessor in interest to accelerate the maturity of the Note and to file this action.  *Id*. (citing *Naylor Affidavit*, ¶ 4, and *UHA's Amended Answer*, ¶ 1).

Plaintiff represents that, during the administrative stay of this case pending resolution of UHA's bankruptcy proceedings, UHA made adequate protection payments, but that, since this case was reactivated on October 23, 2013, UHA has ceased making payments.  *Id.* at 5 (citing *Order*, ECF 11; *Order*, ECF 13; *UHA's Amended Answer*, ¶ 5). Plaintiff contends that UHA has also failed to pay real estate taxes

---

[4] Ms. Naylor is an Asset Manager of LNR Partners, LLC, which is the Special Servicer of the Note and the non-member manager of MSCI.  *Id*. at ¶ 1.  She is familiar with the loan to UHA held by MSCI ("the Loan") because she is responsible for, *inter alia*, overseeing and servicing the Loan and has personal knowledge of the books and records of LNR Partners, LLC, and of MSCI as the books and records relate to the Loan.  *Id*. at ¶ 2.

in default of its obligations, thus requiring plaintiff and/or its
predecessor in interest to advance $58,179.80 in real estate tax
payments. *Id*. at 6 (citing *Naylor Affidavit*, ¶ 5). Plaintiff goes on
to complain that UHA has failed to (1) remit any revenues generated by
the Project since October 30, 2013, or (2) provide plaintiff with the
financial information required by the Loan Documents, including
operating statements, balance sheets and profit and loss statements,
since the period ending June 30, 2013. *Id*. (citing *Naylor Affidavit*,
¶ 6). All these failures, plaintiff contends, constitute defaults
under the Mortgages. *Id*. at 6-7(citing Mortgages, page 39, § 10.1,
attached as *Exhibits B*, *C* and *D* to the *Naylor Affidavit*). Plaintiff
goes on to argue that UHA's license to operate and manage the Project
and to collect and receive the Projects' rents was automatically
revoked upon its default, thus entitling plaintiff and its predecessor
in interest to immediate possession and to apply all such rents to the
outstanding indebtedness of UHA under the Note. *Id*. at 7 (citing
Assignments of Rents, § 2.1, attached as *Exhibits E*, *F* and *G* to the
*Naylor Affidavit*). Although plaintiff has demanded that UHA remit the
rents generated by the Project, UHA has failed and refused to do so.
*Id*. (citing *Naylor Affidavit*, ¶ 6). Plaintiff calculates that UHA
owes the principal sum of $9,511,064.08 as well as interest, a make-
whole premium to be calculated at the time of any default prepayment,
amounts that plaintiff has advanced or may advance in the future for
the preservation and security of the Project and interest on such
advances from the dates made, and fees and costs expended, including
attorney's fees. *Id*. at 6 (citing *Naylor Affidavit*, ¶ 7). According

11

to plaintiff, the Project's value is less than this amount. *Id*. at 7 (citing *Naylor Affidavit*, ¶ 9). Under these circumstances, plaintiff contends, it is entitled to the appointment of a receiver to protect its interests, to ensure that the Project is appropriately maintained and to collect revenues. *Id*. at 7-8.[5]

Plaintiff asks that Amy E. Blessard be appointed as receiver and that her employer, Finsilver/Friedman Management Corporation ("Friedman") be designated as manager of the Project. *Id*. at 9, 15. Ms. Blessard has extensive experience serving as a receiver in Ohio foreclosure cases and Friedman is experienced in managing retail properties. *Id*. at 9 (citing résumé of Amy E. Blessard and list of distressed properties managed by her and/or Friedman, attached as *Exhibit 3* to the *Receivership Motion* ("*Blessard Résumé*")). Plaintiff also asks that, upon the appointment of a receiver, the Court direct UHA, its management company and its agents to turn over to the receiver all of the assets of and income generated by the operation of the Project and order the receiver to forward to plaintiff each month the net proceeds arising from the operation of the Project for the immediately preceding month or, alternatively, for the establishment of reasonable escrow accounts for the payment of real estate taxes and insurance premiums. *Id*. at 15-16.

In response, plaintiff does not appear to dispute plaintiff's right to the appointment of a receiver. *Defendant UHA's Memorandum contra Appointment of Amy Blessard as Receiver Herein*, ECF 49, ("*UHA's*

---

[5] According to plaintiff, the terms of the Mortgages authorize the appointment of a receiver without notice. *Id*. at 8 (citing Mortgages, Section 11.1(g), p. 42, attached as *Exhibits B*, *C* and *D*, attached to *Naylor Affidavit*).

*Opposition to Receivership Motion*").

Federal courts, in the exercise of their equitable powers, enjoy broad discretion in the appointment of receivers to control and manage disputed assets. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *Guy v. Citizens Fidelity Bank & Trust Co.*, 429 F.2d 828, 833-34 (6th Cir. 1970). *See also* Fed. R. Civ. P. 66.[6]  The United States Court of Appeals for the Sixth Circuit has explained that the goal of a receivership and the role of the receiver

> is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary. *See* 13 Moore's Federal Practice PP 66.02-.03 (3d ed. 1999). As an officer of the court, the receiver's powers are coextensive with his order of appointment.

*Liberte Capital Group, LLC v. Capwill,* 462 F.3d at 551.

> "A receiver is an indifferent person between parties, appointed by the court to receive the rents, issue, or profits of land, or other thing in question, pending the suit, where it does not seem reasonable to the court that either party should do it."

*Id.* at 551 n.2 (quoting 1 Clark on Receivers § 11(a) (3d ed. 1959)).

In determining whether or not to appoint a receiver, courts consider several factors. *See*, *e.g.*, *Resolution Trust Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 50 (N.D. Ohio 1992). "Most important of these factors are the adequacy of the security and the financial position of the mortgagor." *Id.* However,

---

[6]These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

Fed. R. Civ. P. 66.

"[i]t would appear that something more than mere inadequacy of the security and insolvency of the debtor are required for a court to bestow upon the receiver the power to manage the property in addition to the collection of rent." *Id*. at 51.  "'It may be any circumstance which commends itself to a court of equity as a reason for granting the relief sought.'" *Id*. (quoting *View Crest Garden Apartments Inc. v. United States*, 281 F.2d 844 (9th Cir. 1960**)).** For example, the danger that the property will diminish in value supports the appointment of a receiver. *Id*. at 52. *See also Wells Fargo, N.A. v. CCC Atl., LLC*, 905 F. Supp.2d 604, 614 (D. N.J. 2012) (listing various factors to consider when determining whether to appoint a receiver).

The record in this action establishes that the appointment of a receiver is appropriate. Plaintiff has submitted the following uncontroverted evidence:  (1) UHA has not paid all real estate taxes on the Project, *Naylor Affidavit*, ¶ 5; (2) UHA has failed to remit to plaintiff any revenue from the operation of the Project since at least October 30, 2013, *id*. at ¶ 6; (3) UHA has failed to provide plaintiff any operating statements, balance sheets or profit and loss statements since the period ending June 30, 2013, or an operating budget for the years 2013 and 2014, *id*.; and (4) the Project's value is less than the amount owed on the loan evidenced by the Note, *id*. at ¶ 9. It also appears that UHA has ceased making payments on its indebtedness since this case was reactivated on October 23, 2013. *Cf*. *UHA's Amended Answer*, ¶ 5.  The evidence also establishes that UHA's financial position is unstable and perhaps insolvent. *See  Naylor Affidavit,* ¶¶ 5-6; *UHA's Amended Answer*, ¶ 5.  Accordingly, there is a strong

14

likelihood that the value of the Project will diminish, even assuming that it has not already diminished.  All of these circumstances warrant the appointment of a receiver.

Although UHA does not appear to challenge the appointment of a receiver, UHA - noting that tenants of the Project include retail businesses such as Mattress Firm and Eye Mart - challenges the appointment of Ms. Blessard as receiver and alleges that Ms. Blessard lacks experience in managing such properties.  *UHA's Opposition to Receivership Motion*, p. 1-2 (arguing that Ms. Blessard's experience "is limited almost exclusively to management of residential multi-family premises (apartments and condominiums).") As plaintiff notes, however, *Reply of Plaintiff MSCI 2007-IQ16 Granville Retail, LLC for Appointment of Receiver*, ECF 50, ("*Reply to Receivership Motion*"), Ms. Blessard has demonstrated experience in managing commercial real estate. *Id*. at 3 (citing *Blessard Résumé*).  In any event, it is anticipated that Ms. Blessard will engage Friedman, which "currently manages over 12 million square feet of properties on behalf of both institutions and private investors[,]" including "a diverse mix of office, industrial retail, and multi-family properties" in various states, including Ohio, *Receivership Proposal*, PAGEID#:1165, to manage the retail properties in this case on a day-to-day basis. *Reply to Receivership Motion,* pp. 2-3 (citing proposed order appointing receiver, p. 4, paragraph j, attached as *Exhibit 1* to *Receivership Motion*). Based on this record, the Court concludes that Ms. Blessard is qualified to act as receiver for the Project in this action.

**WHEREUPON**, *Defendant UHA's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, or in the Alternative for Judgment on the Pleadings, or in the Alternative for Summary Judgment*, ECF 51, is **DENIED**, and the *Motion of Plaintiff MSCI 2007-IQ16 Granville Retail, LLC for Appointment of Receiver*, ECF 41, is **GRANTED**. It is **ORDERED** that Amy E. Blessard of Finsilver/Friedman Management Corporation is **APPOINTED** as receiver to take charge of, preserve, manage, maintain, protect and collect the rents, profits and revenues from the Project as will be set forth in detail by separate order.

September 29, 2014                              *s/Norah McCann King*
                                                Norah McCann King
                                                United States Magistrate Judge