```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

**MSCI 2007-IQ16 GRANVILLE RETAIL, LLC,**

     **Plaintiff,**

  vs.                                        **Case No. 2:11-cv-487**
                                                           **Magistrate Judge King**

**UHA CORPORATION, LLC,** *et al.*,

     **Defendants.**

## OPINION AND ORDER

This is a diversity action for a money judgment and foreclosure of mortgaged premises in Delaware, Fairfield, and Franklin Counties, and associated leases and personal property, following the alleged default by defendant UHA Corporation, LLC ("defendant"), under a commercial loan. Defendant asserts counterclaims for an accounting and an accord and satisfaction. *Amended Answer of Defendant UHA Corporation, LLC to the Complaint,* ECF 36. With the consent of the parties, *see* 28 U.S.C. § 636(c), this matter is now before the Court on plaintiff's motion for summary judgment. *Plaintiff MSCI 2007-IQ16 Granville Retail, LLC's Motion for Summary Judgment* ("*Motion for Summary Judgment*"), ECF 61. Defendant has filed a response to the *Motion for Summary Judgment*, *Memorandum contra of Defendant UHA Corpoartion, LLC to Plaintiff MSCI 2007-IQ16 Granville Retail, LLC's Motion for Summary Judgment* ("*Defendant's Response*"), ECF 71, and plaintiff has filed a reply, *Reply Memorandum of Plaintiff MSCI 2007-IQ16 Granville Retail, LLC in Support of Its Motion for Summary*

*Judgment*, ECF 76.  For the reasons that follow, plaintiff's *Motion for Summary Judgment* is **GRANTED**.

I.

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]."  *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate

"the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "'[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" *Gover v. Speedway Super Am., LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id. See also* Fed. R. Civ. P. 56(c)(3).

## II.

In August 2007, defendant obtained a loan in the principal amount of $9,600,000.00. *Plaintiff MSCI 2007-IQ16 Granville Retail, LLC's First Amended Complaint* ("Amended Complaint"), ECF 29, ¶ 8; *Amended*

3

*Answer of Defendant UHA Corporation, LLC to the Complaint* ("*Answer to Amended Complaint*"), ECF 36, ¶ 1.  In order to secure obligations evidenced by its note, defendant executed and delivered to the original lender three mortgages, encumbering certain land and improvements located in Delaware, Fairfield, and Franklin Counties. *Amended Complaint*, ¶¶ 11-15; *Answer to Amended Complaint*, ¶ 1. Defendant also granted the holder of the mortgages a security interest in any items as part of the real estate that may be subject to a security interest under the Uniform Commercial Code, including, but not limited to "all inventory, machinery, furniture, equipment and fixtures and other property of every kind and nature whatsoever located upon the Real Estate or the improvements thereon or appurtenant thereto or used in connection with the present or future operation of the Real Estate or the improvements thereon[.]"  *Amended Complaint*, ¶ 17; *Answer to Amended Complaint*, ¶ 1.  In addition, defendant executed and delivered to the original lender certain assignments of leases and rents, assigning certain additional collateral in the mortgages as security, including "leases, subleases, tenancies, subtenancies, licenses, contracts, contract rights and occupancy agreements affecting any portion of the mortgaged property, together with rents, revenues, payments, income, issues, profits deposits, accounts, cash, bankruptcy claims, lease guaranties, proceeds and other rights of UHA." *Amended Complaint*, ¶ 26; *Answer to Amended Complaint*, ¶ 1.

The note and mortgages were assigned and transferred by allonges to various entities, and ultimately to plaintiff. *Amended Complaint*,

4

¶¶ 9, 12, 14, 16; *Answer to Amended Complaint*, ¶ 1.  The UCC-1 financing statement securing the security interest in the personal property was also assigned to plaintiff, *Amended Complaint*, ¶¶ 19-25; *Answer to Amended Complaint*, ¶ 1, as were the assignments of leases and rents.  *Amended Complaint*, ¶¶ 27, 29, 31; *Answer to Amended Complaint*, ¶ 1.[1]

According to plaintiff, defendant

> defaulted on its obligations to Plaintiff under the Loan Documents by virtue of various acts and failures to act, including without limitation its failure to make payments when due of amounts payable on the Note, as a result of which Assignee #1 accelerated the maturity of the Note and instituted this foreclosure action.

*Amended Complaint*, ¶ 34.

Defendant has conceded that it defaulted on its obligations under the loan documents, resulting in the accelerated maturity of the note. *Answer to Amended Complaint*, ¶ 1.  In response to the *Amended Complaint*, defendant raised two affirmative defenses.  *Id*. at ¶¶ 5-6. First, defendant alleged that, "since the commencement of this action in June 6, 2011, substantial payments in the form of adequate protection payments were made to substitute plaintiff's predecessor in interest" and after the bankruptcy court dismissed UHA's bankruptcy filing, "additional, voluntary payments continued for more than an additional 12 months[.]"  *Id*. at ¶ 5.  Defendant also asserted the defense of accord and satisfaction or settlement as a bar to plaintiff's claims for relief:

---

[1] Although this litigation was initiated by Bank of America, plaintiff was thereafter substituted as plaintiff.  *Agreed Order Substituting MSCI 2007-IQ16 Granville Retail, LLC as Plaintiff Herein*, ECF 16. *See also Amended Complaint*, ¶ 9; *Answer to Amended Complaint*, ¶ 1.

5

> As its Second Affirmative Defense Defendant states that during the period between May of 2012 and December 2012, Debtor and Plaintiff's predecessor in interest, negotiated a resolution of the controversy between the parties in the nature of a loan modification agreement. At the request of said predecessor, defendant consented and attempted to arrange a "soft block" Controlled Account with Fifth Third Bank, the designated financial institution of the lender. Creation of such an account was a prerequisite to completion of the agreed to loan modification documents. Through no fault of Defendant, and after expenditure of considerable time and effort, Fifth Third Bank suddenly and without reasonable explanation refused to proceed further with the Controlled Account agreement. Thereafter defendant was unable to obtain cooperation from the lender or its servicer in completing the arrangements described above. The course of dealing described represents an Accord and Satisfaction or Settlement barring relief to Plaintiff in this case.

*Id*. at ¶ 6.

Rachel Naylor, asset manager of LNR Partners, LLC,[2] avers that, as of April 4, 2014, defendant is indebted in the principal amount of $9,511,064.08, plus accrued and unpaid interest at the contract rate in the amount of $1,663,015.86 (as of May 1, 2014), plus accrued and unpaid interest at the default rate in the amount of $2,189,064.24, plus late charges and various taxes and other amounts advanced or incurred by plaintiff or its predecessors in interest, as well as additional interest thereon. *Naylor Affidavit*, ¶ 9. According to Ms. Naylor, the loan payoff amount totals $13,727,204.41 as of April 4, 2014. *Exhibit I*, attached to *Naylor Affidavit*.

Although defendant has conceded that it defaulted on its obligations under the loan documents, *Answer to Amended Complaint*, ¶ 1, and asserts in its counterclaim that it has made substantial

---

[2] LNR Partners, LLC, is identified as both the special servicer of the loan evidenced by the note and a non-member manager of plaintiff. *Affidavit of Rachel Naylor* ("*Naylor Affidavit*"), ¶ 2, attached as Exhibit 1 to *Motion for Summary Judgment*.

6

payments since the commencement of this action, *id*. at ¶ 5, *Defendant's Response* offers no evidence of the amount owed by defendant.

**III.**

Under Ohio law, which controls in this diversity action, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), a mortgagee is entitled to foreclose on a mortgage upon evidence that the note and mortgage have been executed and delivered, that the mortgage has been validly recorded, that the amount due is established, and that the mortgagor is in default. *Fidelity Tax, L.L.C. v. Hall*, 2013-Ohio-3165, 2013 WL 3808206, at *3 (10th Dist. Ct. App. July 18, 2013); *Chase Home Fin., L.L.C. v. Heft*, 2012-Ohio-876, 2012 WL 691703 (3rd Dist. Ct. App. Mar. 5, 2012).

The pleadings of the parties establish, for purposes of this litigation, the existence, execution, and delivery of the note and the three recorded mortgages securing defendant's obligations under defendant's note. *Amended Complaint*, ¶¶ 8, 11, 13, 15; *Answer to Amended Complaint*, ¶ 1.

Defendant opposes the *Motion for Summary Judgment* in three respects: (1) defendant challenges plaintiff's standing to pursue the action, (2) defendant disputes the sufficiency of plaintiff's calculation of the amount due, and (3) defendant contends that the parties "agreed to agree to a loan modification." Each argument will be discussed in turn.

**1.   Standing**

Defendant challenges plaintiff's standing as the real party in interest in this action. *Defendant's Response*, pp. 2-3. A plaintiff who does not hold an interest in a note or mortgage at the time that it files a foreclosure action has no standing to invoke a court's jurisdiction. *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St. 3d 13 (2012). Moreover, that lack of standing is fatal to the litigation and cannot be cured after the commencement of the action by mere substitution as the real party in interest. *Id.*

As noted *supra*, the action was initiated in the name of Bank of America, which identified itself as the "successor by assignment from National City Bank," the original lender and mortgagee. *Complaint*, ECF 1, ¶ 2. There is no evidence that, at the time the action was filed, Bank of America did not hold the note and mortgages or that the jurisdiction of this Court had not been properly invoked. *See also Preliminary Pretrial Order*, ECF 21, p. 1 ("The parties agree that the Court has subject matter jurisdiction under 28 U.S.C. § 1332."). Moreover, defendant previously agreed that plaintiff is the current assignee, pursuant to assignments and allonges, is the real party in interest, "and is therefore entitled to prosecute this action as plaintiff." *Agreed Order Substituting MSCI 2007-IQ16 Granville Retail, LLC as Plaintiff Herein*, ECF 16, pp. 2-3. *See also Amended Complaint*, ¶ 9; *Answer to Amended Complaint*, ¶ 1. This Court has previously rejected defendant's challenge to plaintiff's standing to prosecute this action, *Opinion and Order,* ECF 72, pp. 8-9, and the Court reaffirms that conclusion now.

**2.    Calculation of Amount Due**

As noted *supra*, defendant offers no evidence relating to the amount actually due in connection with the loan.  Rather, defendant disputes the calculation of the amount reflected in the *Naylor Affidavit*, "since [the *Naylor Affidavit*] is not made on the personal knowledge of the affiant except in a limited fashion."  *Defendant's Response*, p. 6.  According to defendant, plaintiff should have provided "an affidavit from each and every entity/affiant that came into possession of the loan documents upon which this foreclosure action is sought and the duration of such custody, the identification of such entity providing the information and the date of transfer of the loan documents to the affiant."  *Id*. at p. 5.[3]

The calculations reflected in the *Naylor Affidavit* are based on Ms. Naylor's personal review of documents relating to the loan, and in particular the "Transaction History" and the "Payoff Statement," through April 4, 2014.  *Naylor Affidavit*, ¶ 7.  Ms. Naylor defines the "Transaction History" and describes its origins as follows:

> The Transaction History was created by the master servicer for the Loan at the inception of the securitization of the Loan in the ordinary course of business of the master servicer by persons with firsthand knowledge of the information contained therein, at or about the time that such knowledge was acquired.  The Transaction History was integrated into LNR's records when the Loan was transferred to LNR for special servicing and it is the only record of the Loan history and the record upon which LNR relies. Since the transfer of the Loan to LNR for special servicing, the Transaction History has been maintained by the master servicer under LNR's direct supervision and control as part of the ordinary course of business of LNR

---

[3] Defendant also challenges, on the same basis, the sufficiency of the authentication of various transaction documents.  However, as the Court noted *supra*, defendant's own filings admit plaintiff's allegations as they relate to those documents.

9

> as special servicer of the Loan. Since the transfer of the Loan to LNR for special servicing, I have obtained knowledge of all Loan transactions and I, or other LNR employees in my group, direct the master servicer to enter the information at or about the time of the occurrence of the event that is recorded. I have relied upon the accuracy of the Transaction History in making this affidavit . . . .

*Id.*[4] Ms. Naylor describes the "Payoff Statement," in which the payoff amount is summarized, as follows:

> The Payoff Statement was made at or near the time it is dated by or from information obtained from the Transaction History and the Statement Backup, was transmitted by a person with first-hand knowledge of the information contained therein, and is kept in the course of LNR's regularly-conducted business activity. It is the regular practice of LNR to make and keep such records.

*Id.* at ¶ 8.

Affidavits submitted in connection with motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, "[p]ersonal knowledge is not strictly limited to actions in which the affiant directly participated, but may be derived from reviewing the content of files and records." *Ridenour v. Collins,* 692 F. Supp. 2d 827, 846 (S.D. Ohio 2010). *Accord Howard v. Chase Home Fin., LLC*, No. 11-10897, 2012 WL 3151571, at *1 n.3 (E.D. Mich, Aug. 2, 2012).

It is true that Ms. Naylor may not have personally participated in all the events underlying every entry in the Transaction History and upon which she relied in producing her affidavit. However,

---

[4] The Transaction History is reflected at *Exhibit H*, attached to the *Naylor Affidavit.*

10

plaintiff has established that the records upon which Ms. Naylor personally relied would be admissible in evidence. Records of a regularly conducted activity are admissible into evidence where

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) (eff. Dec. 1., 2014). The *Naylor Affidavit* establishes that the records of which Ms. Naylor has personal knowledge qualify as admissible business records and defendant has not shown that the source of the information contained in those records, or that the method or circumstances of the preparation of those records, indicate that the records lack trustworthiness.

The Court therefore concludes that the *Naylor Affidavit* is properly considered in resolving the *Motion for Summary Judgment*. *See also Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510, 516 (6th Cir. 2014) (corporate representative's personal review of and reliance on the corporation's business records in preparing an affidavit qualify as the "personal knowledge" of the affiant). Moreover, because defendant has offered no evidence controverting plaintiff's

11

calculations, the Court finds that plaintiff has established the amounts due, as reflected in Paragraph 9 of the *Naylor Affidavit*.

3.      **Agreement to Agree to Modify the Loan**

Finally, defendant argues that summary judgment is not warranted because the parties "agreed to agree to a loan modification:"

> [P]laintiff's predecessor in interest conditioned further progress on the compromise of the parties on the execution of a "controlled account." That controlled account, at the insistence of the servicer, was to be opened at Fifth Third Bank. In an effort to comply with the condition precedent, defendant attempted to establish the required account, but was stymied in that effort by the sudden and unexplained refusal of Fifth Third Bank to proceed . . . . No alternative was presented by the special servicer and no further communication was received by the defendant.

In essence, the parties entered into an agreement to agree. *Defendant's Response*, p. 7.

In Ohio, an "agreement to agree" can be, under certain circumstances, enforceable: "The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." *Normandy Place Assocs. v. Beyer*, 2 Ohio St. 3d 102, 105-06 (Ohio 1982). *See also M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 503 (Ohio 1994). "'The actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon.'" *B.W. Rogers Co. v. Wells Bros. Inc.*, 2012-Ohio-750, 2012 WL 605519, at *6 (3rd Dist. Ct. App. Feb. 27, 2012) (quoting *Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St. 3d 232, 236 (Ohio 1990)). "Therefore, a trial court must consider whether the parties manifested a sufficiently definite intention to be

12

bound such that an agreement would be specifically enforceable, or whether they merely negotiated toward a formal contract without ever reaching it." *Id*. (citing *Oglebay Norton Co.*, 52 Ohio St. 3d at 236; *Brotherwood v. Gonzalez,* No. 10-06-33, 2007 WL 1881300 (3rd Dist. Ohio Ct. App. July 2, 2007)).

In support of its contention that the parties entered into an agreement to agree to a loan modification, defendant offers copies of what appears to be an exchange of email correspondence reflecting the parties' efforts to negotiate a loan modification. *Exhibit C* attached to *Defendant's Response*. According to the emails, the parties were "currently negotiating a loan modification agreement" that "remain[ed] under and subject to lender approval." *Id*. at p. 1. The proposed modification would have "require[d] the parties to enter into a Cash Management Agreement and a Springing DACA with Fifth Third [Bank]," but Fifth Third Bank "pass[ed] on [the] opportunity." *Id.*; *Exhibit B* attached to *Defendant's Response*.

Defendant has failed to offer any evidence that the parties "agreed to agree to a loan modification." The email correspondence referred to by defendant demonstrates that the parties were attempting to negotiate a loan modification. The evidence is not, however, sufficient to establish that that the parties either intended to or actually entered into a binding agreement to enter into a loan modification. To the contrary, plaintiff's apparent representation that the parties were "currently negotiating a loan modification agreement" that "remain[ed] under and subject to lender approval," Exhibit C attached to *Defendant's Response*, suggests that the parties

13

were merely negotiating a formal loan modification that was never finalized. Defendant seems to argue that its unsuccessful attempt to open an account at Fifth Third Bank is evidence that the parties "agreed to agree to a loan modification." *See Defendant's Response*, p. 7. However, as discussed *supra*, the email correspondence produced by defendant suggests otherwise. It is significant in this regard that defendant characterizes the required opening of a Fifth Third Bank account as a "condition precedent" to the purported agreement; the fact that this condition precedent was never met or satisfied undermines any suggestion that the parties entered into an enforceable agreement to agree. *See Troha v. Troha*, 663 N.E.2d 1319, 1323 (2nd Dist. Ohio Ct. App. 1995) ("A condition precedent is a condition which must be performed before the obligations in the contract become effective.") (citing *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1 (Ohio 1917)). Moreover, defendant's arguments to the contrary notwithstanding, the Court notes that defendant's *Answer to Amended Complaint* does not expressly assert the existence of an "agree[ment] to agree to a loan modification" as an affirmative defense or counterclaim. The *Answer to Amended Complaint* asserts as defenses only accord and satisfaction and settlement, but there is no evidence whatsoever that the parties entered into an actual loan modification agreement.

In short, the Court concludes that defendant has not raised a genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law. Plaintiff's *Motion for Summary Judgment*, ECF 61, is therefore **GRANTED.**

Plaintiff is **DIRECTED** to provide, within seven (7) days, a proposed order directing foreclosure of the mortgaged premises.


February 10, 2015                              *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge

15