IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MSCI 2007-IQ16 GRANVILLE RETAIL, LLC,

      Plaintiff,

vs.                                            Case No. 2:11-cv-487
                                                  Magistrate Judge King

UHA CORPORATION, LLC, *et al.*,

      Defendants.

**OPINION AND ORDER**

This matter is before the Court on the *Joint Notice of Submission of Proposed Entry of Confirmation of Special Master Sale and Distribution*, ECF No. 159 ("*Request to Confirm Sale*") and *Objections of Defendant, UHA Corporation, LLC to Confirmation of Sale of Real Estate*, ECF No. 164 ("*Objections*"). For the reasons that follow, the *Request to Confirm Sale* is **GRANTED** and the *Objections* are **DENIED**.

**I.**

Defendant UHA Corporation, LLC ("defendant" or "UHA") obtained a loan in the principal amount of $9,600,000.00, secured by three mortgages encumbering certain real and personal properties located in Delaware, Fairfield, and Franklin Counties ("the Properties"). *Opinion and Order*, ECF No. 89, pp. 3-4. The note and mortgages were assigned and transferred by allonges to various entities and, ultimately, to plaintiff MSCI 2007-IQ16 Granville Retail, LLC ("plaintiff" or "MSCI"). *Id*. at 4-5. On September 29, 2014, this Court appointed a receiver to oversee operations of the Properties

1

("Receiver"). *Opinion and Order*, ECF No. 72; *Order Granting Plaintiff MSCI 2007-IQ16 Granville Retail, LLC's Motion for Appointment of Receiver*, ECF No. 73 ("*Order Appointing a Receiver*").[1] The *Order Appointing a Receiver* authorized the Receiver to negotiate with any persons regarding the use, lease and/or sale of the Properties, or any portion thereof, and to enter into a lease, purchase agreement, or sale upon plaintiff's written consent. *Order Appointing a Receiver*, p. 6. That order further provides that any proposed sale must be approved in advance by the Court. *Id*.

On December 15, 2014, defendant advised the Court that Dublin Bridge Street Firehouse Investments, LLC, had tendered to the Receiver a written cash offer to purchase the Properties for $7,600,000.00 ("the cash offer"). *Notice*, ECF No. 83. The Receiver rejected this cash offer. *Notice*, ECF No. 86. Plaintiff explained, *inter alia*, that it was owed in excess of $13 million, and that neither plaintiff nor the Receiver supported the cash offer. *Status Report*, ECF No. 87, p. 2. Defendant, however, complained that the Receiver "reject[ed] the offer without explanation, justification, or counter[,]" that defendant expected the cash offer "to be, at the least, a springboard for further discussions with the potential buyer[,]" and that the cash offer "appears to have been well within the realm of reasonableness[.]" *Status Report*, ECF No. 88.

On February 10, 2015, the Court granted summary judgment in favor of plaintiff, *Opinion and Order*, ECF No. 89, appointed a Special Master, *Order*, ECF No. 102, authorized the sale of the Properties,

---

[1] On April 6, 2016, plaintiff filed a motion to substitute Amy Blessard for Lori Griffith as the Receiver. ECF No. 167.

2

*Amended Judgment Entry and Decree of Foreclosure*, ECF No. 107, and directed the Special Master to immediately proceed with the sale of the Properties at public auction, subject to the relevant notice, advertising, and other requirements mandated by law. *Order*, ECF No. 111.

Defendant filed a *Notice of Appeal* on May 14, 2015. *Notice of Appeal*, ECF No. 112. That appeal remains pending. *See MSCI 2007-IQ16 Granville Retail, LLC v. UHA Corporation, LLC*, No. 15-3524 (6th Cir.). This Court afforded the parties an opportunity to address the effect, if any, of the appeal on these proceedings. *Order*, ECF No. 118. Defendant neither addressed that issue nor requested a stay. The Court concluded that proceedings on the judgment were not stayed by reason of that appeal. *Order*, ECF No. 123.

The Special Master secured appraisals and reviews of the Properties. *See*, *e.g.*, *Certificate,* ECF No. 138. The Court approved those appraisals and reviews and directed the Clerk to schedule a public sale in accordance with General Order No. 07-03, § 3.5. *Order*, ECF No. 141. On January 8, 2016, plaintiff filed a notice that the "real property which is the subject of this action . . . will be sold by Special Master Michael P. O'Grady by public auction on **February 11, 2016 beginning at 2:00 p.m.**" *Notice of Special Master Sale*, ECF No. 142, p. 1 (emphasis in the original). The notice further advised that the "real property has been appraised by the Special Master's appraisers at $6,700,000.00 and must be sold for no less than $4,466,667.00." *Id*. at 1-2. The *Certificate of Service* attached to that notice indicates that a copy of the notice was provided to

3

counsel for all parties, including defendant's then-counsel, by either mail or through the Court's electronic filing system. *Id.* at 3. On February 8, 2016, proof of publication of the special master sale in Franklin, Fairfield, and Delaware Counties was filed by plaintiff. *Notice of Filing Proofs of Publication of Special Master Sale*, ECF No. 152.

The sale of the Properties proceeded on February 11, 2016; plaintiff was the successful purchaser with a bid of $4,466.667.00 ("the sale"). *Notice of Deposit of Foreclosure Sale/Notice of Sale Results,* ECF No. 154.

On February 12, 2016, plaintiff advised the Court that it had assigned its bid of the sale of the Properties. *Notice of Assignment of Bid*, ECF No. 156. Thereafter, plaintiff and the Special Master jointly requested confirmation of the sale to plaintiff for a purchase price of $4,466.667.00. *Request to Confirm Sale*, PAGEID#:2675. Defendant objects to the confirmation of the sale, arguing that the sale did not comply with applicable law and that equity requires that the Court order a new sale. *See Objections*. Plaintiff opposes the *Objections*. ECF No. 165 ("*Plaintiff's Opposition*"). With the filing of defendant's reply memorandum in support of its *Objections*, ECF No. 166 ("*Defendant's Reply*"), this matter is now ripe for resolution.

**II.**

Defendant first argues that the sale failed to comply with applicable law because defendant did not receive adequate advance notice of the sale. *Objections*, pp. 1-4. A standing order of this Court, General Order No. 07-03, governs foreclosure actions in this

4

district and provides, *inter alia*, that "procedures for sale on foreclosure shall be in accordance with the practice and procedure in the State of Ohio as provided in Ohio Rev. Code Ch. 2329." *Id*. at § 3.0. General Order No. 07-03 further provides that "[t]he plaintiff is required to file a Certificate of Service with the Clerk indicating that the Notice of Sale was mailed to all parties at their last known address or served electronically through the Courts' [sic] electronic filing system." *Id*. at § 3.5. Ohio law requires, *inter alia*, that the judgment creditor or the judgment creditor's attorney

> (i) Cause[] a written notice of the date, time, and place of the sale to be served in accordance with divisions (A) and (B) of Civil Rule 5 upon the judgment debtor and upon each other party to the action in which the judgment giving rise to the execution was rendered;
>
> (ii) At least seven calendar days prior to the date of the sale, file [] with the clerk of the court that rendered the judgment giving rise to the execution a copy of the written notice described in division (A)(1)(a)(i) of this section with proof of service endorsed on the copy in the form described in division (D) of Civil Rule 5.

O.R.C. § 2329.26(A)(1)(a). "A sale of lands and tenements taken in execution may be set aside in accordance with division (A) or (B) of section 2329.27 of the Revised Code." O.R.C. § 2329.26(B). Section 2329.27(B)(3) "addresses the effect of a confirmation of sale and provides, in pertinent part, that a confirmation is deemed to constitute a judicial finding[.]" *Fifth Third Mortg., Co. v. Rankin*, 4th Dist. No. 11CA8, 2012-Ohio-2806, at ¶ 11 (Ohio Ct. App. May 30, 2012). Specifically, an order confirming a sale under this statute must find, *inter alia*, "[t]hat all parties entitled to notice under division (A)(1)(a) of section 2329.26 of the Revised Code received adequate notice of the date, time, and place of the sale of the lands

5

and tenements[.]" O.R.C. § 2329.27(B)(3)(a)(2).

In the case presently before the Court, defendant contends that plaintiff did not comply with its statutory obligations because "[t]he first notice with a certificate of service given to UHA in any fashion occurred on February 8, 2016 [ECF No. 152] . . . which [was] filed by Plaintiff's counsel **merely three days prior to the sale in question** [on February 11, 2016]." *Objections*, p. 3 (emphasis in original). Defendant therefore argues that plaintiff's filing was less than the seven calendar days prior to the sale required by O.R.C. § 2329.26(A)(1)(a)(ii). Defendant's argument in this regard is manifestly incorrect.

As plaintiff points out, defendant received notice of the sale on January 8, 2016, more than thirty days prior to the sale. *See Notice of Special Master Sale*, ECF No. 142, p. 1 (advising, *inter alia*, that the "real property which is the subject of this action . . . will be sold by Special Master Michael P. O'Grady by public auction on **February 11, 2016 beginning at 2:00 p.m.**") (emphasis in original). This notice was accompanied by a certificate of service certifying that notification had been sent to defendant's former counsel, Robert J. Morje. ECF No. 142, p. 3. The notice of electronic filing generated by CM/ECF reflects that Attorney Morje was served by email at the address rmorje.attorney@gmail.com. *See*, *e.g.*, Exhibit 1 (copy of CM/ECF notice), attached to *Defendant's Opposition*. This electronic service on Attorney Morje constitutes service on defendant. *See* Fed. R. Civ. P. 5(b)(1), (2)(E); S.D. Ohio Civ. R. 5.2(b). As plaintiff notes, defendant concedes as much because defendant admits

6

that the *Notice of Filing Proofs of Publication of Special Master Sale*, ECF No. 152, filed on February 8, 2016, which included the same certificate of service as ECF No. 142, was effective service. *See* ECF No. 152, p. 3; *Objections*, p. 3 (admitting that defendant received notice on February 8, 2016, via *Notice of Filing Proofs of Publication of Special Master Sale*, ECF No. 152). Notably, the notice of electronic filing generated by CM/ECF reflects that Attorney Morje was served by email at the same address as the earlier-filed notice, rmorje.attorney@gmail.com. Based on this record, defendant's assertion that plaintiff failed to comply with the notice requirement of Ohio law is not well-taken.

### III.

Defendant next contends that confirmation of the sale would be inequitable to plaintiff and to defendant. *Objections*, pp. 4-6 (citing *Wells Fargo Bank, N.A. v. Young*, 2nd Dist. No. 2009 CA 12, 2011-Ohio-122, ¶¶ 28-30 (Ohio Ct. App. Jan. 14, 2011)). A court must confirm a sale if it "finds that the sale was made, in all respects, in conformity with sections 2329.01 to 2329.61 of the Revised Code[.]" O.R.C. § 2329.31(A). *See also Ohio Sav. Bank v. Ambrose*, 56 Ohio St.3d 53, 55 (1990) ("If the court, after examining the proceedings taken by the officers, finds the sale was made in conformance with R.C. 2329.01 to 2329.61, inclusive, it shall confirm the sale.") (citing O.R.C. § 2329.31).

"While the statute speaks in mandatory terms, it has long been recognized that the trial court has discretion to grant or deny confirmation." *Id*. In exercising its discretion, a court must be

7

mindful that "the primary purpose and goal of a foreclosure sale [is] to protect the interests of the mortgagor-debtor . . . and at the same time ensure that secured creditors will receive payment for unpaid debts." *Ohio Sav. Bank*, 56 Ohio St.3d at 56 (internal citations omitted). A corollary to this principle "is the desire to obtain the maximum amount of money from the sale." *Id*. In addition, "the general policy of the law is to give judicial sales a certain degree of finality." *Id*. "Therefore, the confirmation of a judicial sale cannot be set aside except for 'fraud, mistake or some other cause, for which equity would avoid a like mistake between private parties.'" *Fed. Home Loan Mtge. Corp. v. Langdon*, 4th Dist. No. 07AP12, 2008-Ohio-776, ¶ 17 (Ohio Ct. App. Feb. 19, 2008) (quoting *Dairymen's Cooperative Sales Co., Inc. v. Frederick Dairy, Inc.*, 17 Ohio Law Abs. 690, 692 (1934)). *See also Aurora Bank F.S.B. v. Gordon*, 8th Dist. No. 103138, 2016-Ohio-938, ¶¶ 11-12 (Ohio Ct. App. Mar. 10, 2016) (same); *Mitchell v. Crain*, 108 Ohio App. 143, 151 (Ohio Ct. App. 6th Dist. 1958) ("In the absence of fraud, irregularity or misconduct affecting the validity of a judicial sale, such sale will not be set aside and confirmation refused in order to allow the bid of the purchaser to be advanced by another bidder.").

In the case presently before the Court, defendant argues that confirmation of the sale would be inequitable for a variety of reasons. First, defendant contends that "UHA on several occasions has found outside investors to make bids upon the property" and the "**lowest** bid submitted in that regard" was "summarily rejected, without any counteroffer or real discussion occurring." *Objections*, p. 5

8

(emphasis in original) (citing *Status Report*, ECF No. 87, filed on December 22, 2014) (reflecting a purchase bid of $7,600,000.00)). Defendant complains that the confirmation of a sale for a price of slightly more than one-half of that cash offer would be inequitable. *Id*. This Court disagrees.

As an initial matter, defendant offers no evidence that it located outside investors on "several occasions" to bid on the Properties. The only evidence of an outside bid was the cash offer of $7,600,000.00 from Dublin Bridge Street Firehouse Investments, LLC, on December 15, 2014, which the Receiver rejected. *Notice*, ECF No. 83; *Notice*, ECF No. 86. The *Order Appointing a Receiver* authorized the Receiver to negotiate with any persons regarding the use, lease and/or sale of the Properties, or any portion thereof, and to enter into a lease, purchase agreement, or sale upon plaintiff's written consent. *Order Appointing a Receiver*, p. 6. Stated differently, the *Order Appointing a Receiver* did not obligate the Receiver to accept the cash offer.

Defendant contends that confirming the sale under these circumstances would be inequitable; however, "[m]ere inadequacy of price unaccompanied by any other reason or cause is not sufficient ground for setting aside a sale which has been regularly made in accordance with law." *Ozias v. Renner*, 78 Ohio App. 168, 169 (Ohio Ct. App. 2nd Dist. 1945). Moreover, the Court's General Order No. 07-03, § 3.7 requires that "[t]he sale of the foreclosed property shall require a minimum bid of two-thirds of the appraised value in accordance with Ohio Rev. Code § 2329.20." Here, the Properties were

9

appraised – after the cash offer – at $6,700,000.00. *See Notice of Special Master Sale*, ECF No. 142; *Motion to Approve Appraisals and Reviews*, ECF No. 137; *Motion to Approve Appraisals and Reviews*, ECF No. 139; *Order*, ECF No. 141. In noticing the sale, plaintiff advised that the Properties "must be sold for no less than $4,466,667.00[,]" ECF No. 142, which amounts to two-thirds of the appraised value. The successful purchase bid was $4,466.667.00. *Notice of Deposit of Foreclosure Sale/Notice of Sale Results*, ECF No. 154. In short, this bid complies with the minimum bid of two-thirds of the appraised value required by the Court's General Order No. 07-03, § 3.7.

Defendant nevertheless insists that confirming the sale at this bid amount rather than accepting the earlier cash offer is inequitable because doing so "has actually increased the amount of UHA's deficiency to Plaintiff[.]" *Objections*, p. 5. Plaintiff responds that defendant's loan obligation is non-recourse and that its "judgment against UHA is in the form of an *in rem* judgment against those properties." *Plaintiff's Opposition*, p. 4. Because plaintiff does not seek a monetary judgment against defendant UHA, "as a result of which Plaintiff will not have a monetary deficiency judgment against UHA," plaintiff reasons that the Receiver's rejection of the cash offer will not work to defendant's prejudice. *Id*.

In reply, defendant clarifies that plaintiff has obtained "a judgment which is in essence a deficiency judgment" in a state court action against – not UHA – but against one Uziel Haimoff, guarantor of the notes at issue in this case. *Defendant's Reply*, p. 1 (citing *MSCI 2007-IQ16 Granville Retail, LLC v. Haimoff*, Franklin County Court

10

of Common Pleas No. 14 CV 005081, granting judgment in plaintiff's favor against Uziel Haimoff as follows, *inter alia*: "For the principal sum of $9,494,447.92, together with accrued and unpaid interest in the amount of $4,983,522.20, late charges in the amount of $172,220.92, and various fees and other amounts paid, advanced or otherwise incurred under the Mortgages by Plaintiff . . . and not reimbursed by UHA")("the state court action"). According to defendant, "Mr. Haimoff is entitled to credit for any funds received as a result of the sale of the property." *Id*. By rejecting the higher cash offer, plaintiff "has effectively artificially inflated the judgment against Mr. Haimoff . . . [which is] in excess of that which is just and proper." *Id*. at 2. Defendant's argument in this regard is not well-taken.

It is defendant UHA Corporation, LLC, that defaulted on its obligations under the loan documents at issue in this case; Mr. Haimoff is not a party to this litigation. Defendant UHA urges this Court to refuse to confirm the sale because it would be inequitable to Mr. Haimoff. However, defendant cites to no authority that requires this Court to refuse to confirm a sale that otherwise complies with all governing requirements, based on a claimed inequity to a non-party. *See generally Defendant's Reply*. Based on this record, and in the absence of any contrary authority from defendant, the Court is not persuaded that its discretion is properly so exercised. *See* O.R.C. § 2329.31(A); *Ohio Sav. Bank*, 56 Ohio St.3d at 55. *Cf*. *Fed. Home Loan Mtge. Corp.*, 2008-Ohio-776, ¶ 17; *Mitchell*, 108 Ohio App. at 151.

Defendant next argues that confirming the sale would be

11

inequitable because, had defendant received proper notice of the sale, it would have "at least had the opportunity to notify the various entities that have entered bids on propertyin [sic] the past and they could have attended the sale." *Objections*, p. 5. However, as discussed *supra*, defendant did in fact receive proper notice of the sale. Its objections based on alleged improper notice are therefore without merit. Moreover, notice of the sale of the Properties was published on multiple occasions in Franklin, Fairfield, and Delaware Counties. *See Notice of Filing Proofs of Publication of Special Master Sale*, ECF No. 152. Notably, defendant offers no evidence that this notice by publication was insufficient to reach any entities interested in bidding on the Properties.

Finally, defendant complains that plaintiff will realize a "windfall" by receiving "a very significant monthly income by virtue of the good will and tenants previously established by UHA[,]" although defendant concedes that this argument "is not normally considered in foreclosure proceedings[.]" *Objections*, p. 5. There are reasons why this argument is not normally considered in foreclosure proceedings. This Court calculated defendant's indebtedness to plaintiff at more than $13,000,000.00 plus interest accruing after May 1, 2014 at the rate of 11.511% per annum (calculated on the basis of a 360-day year), as well as a make-whole premium and attorney's fees in undetermined amounts. *See Amended Judgment Entry and Decree of Foreclosure*, ECF No. 107, p. 2. The appraised valued of the Properties, however, was $6,700,000.00. *See Notice of Special Master Sale*, ECF No. 142; *Motion to Approve*

12

*Appraisals and Reviews*, ECF No. 137; *Motion to Approve Appraisals and Reviews*, ECF No. 139; *Order*, ECF No. 141.  The amount owed to plaintiff therefore far exceeds the appraised value of the Properties. Moreover, and as even defendant concedes, *Objections*, p. 5, it is the Receiver who has collected the income from the Properties, and it is the Receiver who has done so in order to manage and maintain the Properties and to prevent diminution of the value of the Properties. *See generally Order Appointing a Receiver*.  Rather than resulting in a "windfall" to plaintiff, this procedure "reduces the sums that Plaintiff must advance. . ., thereby potentially preventing plaintiff from suffering even greater harm than it already has." *Plaintiff's Opposition*, p. 5. Although the Receiver must forward to plaintiff any net proceeds from the collected rents (the amount less monthly expenses), *see generally Order Appointing a Receiver,* the Court is not persuaded that this fact will result in an inequitable windfall to plaintiff, particularly in light of the degree to which the amount owed exceeds the appraised value of the Properties. For all these reasons, then, the Court is not persuaded that confirmation of the sale is inequitable.

    **WHEREUPON**, the *Joint Notice of Submission of Proposed Entry of Confirmation of Special Master Sale and Distribution*, ECF No. 159, is **GRANTED** and the *Objections of Defendant, UHA Corporation, LLC to Confirmation of Sale of Real Estate*, ECF No. 164, are **DENIED**. *Plaintiff's Motion to Strike Defendant's Motion for Leave to Submit Objections to Confirmation of Sale*, ECF No. 160, is **DENIED as moot**.

    The Court will forthwith direct the entry of the confirmation of

13

sale by separate order.


May 2, 2016                                        *s/Norah McCann King*
                                                  Norah McCann King
                                          United States Magistrate Judge